# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISON

**THE GROVE RESORT AND SPA, LLC**　　　　　Case No.:_____

　　　**PLAINTIFF,**

v.

**NAVIGATORS SPECIALTY INSURANCE COMPANY,**
**and EDGEWOOD PARTNERS INSURANCE CENTER,**
**INC. d/b/a EPIC INSURANCE BROKERS &**
**CONSULTANTS,**

　　　**DEFENDANTS.**
_____/

## COMPLAINT

　　　Plaintiff, THE GROVE RESORT AND SPA, LLC sues NAVIGATORS SPECIALTY INSURANCE COMPANY and EDGEWOOD PARTNERS INSURANCE CENTER, INC. d/b/a EPIC INSURANCE BROKERS & CONSULTANTS and alleges the following:

## JURISDICTION AND VENUE

　　　1.　　This Court has jurisdiction under 28 U.S.C. § 1332, *Diversity of Citizenship; Amount in Controversy; Costs*, in that the parties are business entities established under the laws of different states, and therefore citizens of different states, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

1

2. Venue is proper in this Court under 28 U.S.C § 1391(a) and 28 U.S.C § 1391(b)(2) in that the insured property and project are located in Orange County, Florida.

3. This action is ripe for adjudication.

4. All conditions precedent to bring this case have occurred or been waived.

**PARTIES**

5. Plaintiff, THE GROVE RESORT AND SPA, LLC, is a Delaware limited liability company, with its principal place of business in the State of Florida, and a named insured under Commercial Lines Policy IS16CGL182861IC.

6. At all times material hereto, Defendant, NAVIGATORS SPECIALTY INSURANCE COMPANY (Navigators) was a corporation organized and existing under the laws of the State of New York with its principal place of business located in New York, New York. Navigators issued Commercial Lines Policy IS16CGL182861IC (**Exhibit 1**). Defendant currently transacts business as Navigators, A Brand of Hartford.

7. At all material times hereto, Defendant EDGEWOOD PARTNERS INSURANCE CENTER, INC. d/b/a EPIC INSURANCE BROKERS & CONSULTANTS (EPIC) was a corporation organized and existing under the laws of the State of California with its principal place of business located in San

Francisco, California. EPIC, at all times material hereto, acted as the insurance broker providing information to Plaintiff as to the terms and conditions of Commercial Lines Policy IS16CGL182861IC.

## BACKGROUND

8. Plaintiff is named as an insured party in Commercial Lines Policy IS16CGL182861IC. In anticipation of taking over and completing a construction project in Winter Garden, Florida, then known as Grand Palisades, Plaintiff solicited quotes through several insurance brokers that would insure Plaintiff and its affiliates for liability arising from work already completed on the project as well as any work performed by or on behalf of Plaintiff to complete the project.

## INSURANCE QUOTES FOR THE PROJECT

9. The original project developer began construction of the 878 room resort but then abandoned the project in 2008 and subsequently filed for bankruptcy in 2013 after having completed the exterior of the buildings which included the installation of windows and doors. The resort remained unoccupied but maintained for several years until purchased by an affiliate of Plaintiff in October of 2014. Plaintiff completed the project, opening an initial phase in March 2017 and completing the overall project, which is now known as The Grove Resort & Water Park Orlando, in 2018.

10. An essential element to the insurance coverage solicited by Plaintiff was coverage for claims arising from work performed on the project prior to Plaintiff acquiring title to the property and completing construction of the resort. Plaintiff sought coverage to protect against, among other things, any liability arising from the prior work, or damages to work completed by Plaintiff, its affiliates, contractors, and subcontractors, that may result from defects in the work completed prior to Plaintiff initiating construction to complete the project.

11. In January 2016, Plaintiff was in communication with EPIC regarding a quote for the Policy. On January 20, 2016, EPIC, through Phillip Goodman informed Plaintiff that it had received a quote from the Navigators that "includes the old work":

> **From:** Philip Goodman
> **Sent:** Wednesday, January 20, 2016 2:00 PM
> **To:** Dave DAmbrosio
> **Cc:** Kevin Mays ; Tamara Igel
> **Subject:** RE: Palisades - exterior work
>
> Ocip-we have a quote from navigators now. It includes the old work. We may be able to get this done for as little as $3 million. However to be safe and until we confirm please use 4.5 million.

**Exhibit 2.**

12. Plaintiff's desire to insure the "old work" and the future work was critically important to them. This is manifested by Plaintiff asking the Defendants to verify this on numerous occasions. Just two days after receiving the above

assurance from EPIC that the quote and policy would "includes the old work," an additional insurance broker, AmWINS Brokerage of New England, also verified this assurance. AmWINS Senior Vice President Gary Grindle sent an email to Joseph Savarese at Navigators asking for a response to questions about coverage from Plaintiff. That email provides:

| | |
|---|---|
| From: | Savarese, Joseph <JSavarese@navg.com> |
| Sent: | Friday, January 22, 2016 9:55 AM |
| To: | Gary Grindle |
| Cc: | Philhower, Robert; Claudine Benson |
| Subject: | RE: Grande Palisades Property Holdings LLC - Quote |

Gary plse see below. Hope we get this one. Safe travels.

**From:** Gary Grindle [mailto:Gary.Grindle@amwins.com]
**Sent:** Friday, January 22, 2016 9:44 AM
**To:** Savarese, Joseph
**Cc:** Philhower, Robert; Claudine Benson
**Subject:** Grande Palisades Property Holdings LLC - Quote

Hi Joe,

The agent is trying to get this wrapped up in the next couple of days and I'm going to be traveling most of next week so I wanted to touch base on a few things:

1. We already discussed this but the agent asked me to confirm again that we are contemplating coverage for both existing and future work on the project, i.e. no prior work exclusion. AIG quoted also, slightly higher than you, and affirmatively stated this so he just wants to be certain. Correct-no prior work exclusion

(**Exhibit 3**).

13. As can be seen from this email, the Plaintiff wanted to confirm <u>for a second time</u> that the policy would include the old work and future work. Mr. Grindle specifically noted that he and Mr. Savarese had previously discussed that issue. It was also noted that a competing insurer had quoted the coverage and "affirmatively stated" coverage for the old work was included.

5

14. In response to this second confirmation, Navigator's Mr. Savarese stated "Correct – no prior work exclusion."

15. In reliance on the above multiple representations of Navigators and EPIC, Plaintiff purchased the policy and paid a total policy premium of $1,467,804.00 for Commercial Lines Policy IS16CGL182861IC. **Exhibit 1.** The stated policy period, as set out in the declarations page of the policy, was from March 1, 2016 through March 1, 2021.

## PLAINTIFF'S INSURANCE CLAIM

16. The project was completed in 2018. On June 24, 2020, a rainstorm resulted in extensive water intrusion into at least 80 units, revealing defects in the installation and sealing of the approximately 3500 windows at the resort. Since then, resort management has received numerous complaints from unit owners and resort visitors citing water damage in numerous units. An assessment of the source of the water established that the leaks are coming from windows installed prior to Plaintiff assuming control over the construction project.

17. Contractors consulted to assess the water damage and leaking windows (and resultant damage to other property) have estimated a cost of $819,713.00 to remove defective caulking and re-caulk all 3500 windows at the resort, in addition to other measures to prevent further water damage. Addressing the defects causing the water intrusion is necessary to prevent further damage and

protect the work completed by and on behalf of Plaintiff, although that work was not defective. The defects resulted in property damage to work completed by or on behalf of Plaintiff and is necessary to prevent further damage to Plaintiff's work.

18. On or about July 14, 2020, a claim was filed with Navigators on Plaintiff's behalf by Mr. Joe DiBiasi of EPIC. Claim Number CGL340232 was assigned to Plaintiff's claim. **Exhibit 4**.

19. On or about July 28, 2020, Mr. Zachary Fagiano, a Risk Management Consultant for Plaintiff, asked Mr. Philip Goodman, (then) Senior Vice President of EPIC and a colleague of Mr. DiBiasi (who filed the claim with Navigators on behalf of Plaintiff) to identify the language in the 1.4 million dollar policy that covered claims related to the "old work" performed on the project prior to Plaintiff taking over control. In an email exchange between Mr. Fagiano and Mr. Goodman at EPIC, Mr. Fagiano asked: "Can you point me to the section that provides coverage for prior work?" Mr. Goodman replied a few moments later: "It is included by not being excluded." **Exhibit 5**.

20. Notwithstanding EPIC's assurance the "old work" was covered, early email communications between Plaintiff's representatives and Navigators suggested that Navigators intended to deny any liability to pay the claim. Notwithstanding Plaintiff and EPIC informing Navigators of the prior assurances

that the "old work" was covered, Navigators summarily rejected that fact in an email dated August 18, 2020, stating:

> Lastly, there's been verbal communication (again) speaking to some coverage for work previously done on this project which would precede the effective date of the Navigators policy. It is alleged their understanding of this comes from assurances they received from either your offices or others involved with placing the policy. Let me stress again what I shared on our last call, the Navigators policy provides coverage for claims arising from enrolled parties who worked on the designated premise no earlier than March 1, 2016. None of the information received to date would indicate the implicated parties meet that criteria.

**Exhibit 6.**

21.   Defendant has denied coverage asserting that the policy did not cover the construction performed prior to Plaintiff taking over the project (*i.e.*, the "old work").  **Exhibits 7, 8 and 9**.

22.   Because Plaintiff and its affiliates were taking over a partially constructed project, coverage for potential claims arising from or related to existing construction at the partially completed resort was a critical and essential element of any insurance policy to be issued as the project moved forward. Plaintiff, its affiliates and its representatives expressly requested confirmation of coverage from Navigators and EPIC on multiple occasions--to confirm the coverage would include the prior existing work, as they had a quote from a competing insurance company that affirmatively stated it covered the "old work."

23. Representatives of all parties involved in preparing a quote to present to Plaintiff, including Mr. Savarese employed by Navigators, Mr. Grindle, with AmWins Brokerage of New England and Mr. Goodman with EPIC Brokers, fully understood and openly discussed by email that Plaintiff was seeking insurance for the "old" or "existing work" and that the policy was to include claims arising from or related to the construction work completed prior to Plaintiff acquiring title to the property.

24. Whether by mistake, negligence or intentional misrepresentation, Defendant Navigators failed to provide the coverage requested, bargained for and, based upon representations made to Plaintiff and Plaintiff's representatives, *paid for* by payment of the $1,467,804.00 premium for Commercial Lines Policy IS16CGL182861IC. Navigators is now denying coverage as to Plaintiff's claim, relying upon its own mistake, negligence, omission of information, misrepresentations, or fraud.

## COUNT I

### Reformation of Insurance Contract or Policy

25. Plaintiff realleges paragraphs one (1) through (24) as if set out in this Count I in full.

26. This is an action against Defendant Navigators for reformation of Commercial Lines Policy IS16CGL182861IC.

27. Plaintiff's request for coverage for damages or claims arising from the previously completed construction at the partially constructed resort complex was unambiguous and never in question.

28. The mutual understanding and intent of the parties that the "old" or "existing work" would be covered was memorialized in the email from Mr. Goodman to Plaintiff dated July 20, 2016 (**Exhibit 2**) as well as an email from Mr. Savarese with Navigators to Mr. Grindle at AmWins. **Exhibit 3.**

29. Plaintiff relied on the multiple representations made by EPIC and Navigators that the "old" or "existing work" was included in the policy.

30. The policy does not express the agreement of the parties to include coverage for the "old" or "existing work."

31. The failure to include the proper language in the policy to reflect the unambiguous intent of the parties that the policy would include coverage for the "old" or "existing work" was mutual mistake. Therefore, Commercial Lines Policy IS16CGL182861IC should be reformed consistent with the intention of the parties that the policy covered "all existing and future work on the project."

32. Alternatively, if the failure of the policy to contain coverage for the "old" or "existing work" was a unilateral mistake on the Plaintiff's part, such mistake was the result of Navigator's and EPIC's inequitable conduct of making false statements and assurances.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Final Judgment in favor of Plaintiff providing that:

A. Commercial Lines Policy IS16CGL182861IC is reformed to ensure claims arising from or related to construction work on the partially completed resort performed prior to Plaintiff assuming control of the project;

B. Plaintiff's claim, Claim Number CGL340232, is a covered claim under the reformed insurance policy and Navigators is responsible for paying Claim Number CGL342242; and,

C. Costs, including attorney's fees and costs to the extent authorized by law or contract, and such other relief this Court deems just and proper.

## COUNT II
### Promissory Estoppel — Defendant Navigators

33. Plaintiff realleges paragraphs one (1) through (24) as if set out in this Count II in full.

34. This is an action for promissory estoppel against Defendant Navigators.

35. Navigators represented that the policy would contain coverage for the "old" or "existing work" which is a material fact critically important to the Plaintiff.

36. Plaintiff relied upon the representation of Navigators and EPIC (Navigator's agent) that the policy would contain coverage for the "old" or "existing work" to pay a premium of $1,467,804.00 for Commercial Lines Policy IS16CGL182861IC.

37. Plaintiff assumed responsibility for a minimum of $819,713.00 in costs, as reflected in Claim Number CGL340232, to perform the necessary work to remediate the defects discovered in the old or existing work to protect the work Plaintiff and its affiliates completed.

38. After representing that the "old" or "existing work" was covered by the policy, Defendant Navigators changed their position to the Plaintiff's detriment, and now take the position that the policy never covered the "old" or "existing work."

39. Plaintiff relied upon Navigators' representation as to the scope of coverage of the policy to purchase the policy and Plaintiff has incurred liability and damages by Navigators' taking an inconsistent position and denying Plaintiff's claim.

WHEREFORE, Plaintiff respectfully requests that this Court enter Final Judgment in favor of Plaintiff providing that:

A. Navigators is estopped from denying Claim Number CGL340232 and that Navigators is responsible for paying Claim Number CGL342242; and,

B. Costs, including attorney's fees and costs to the extent authorized by law or contract, and such other relief this Court deems just and proper.

## COUNT III

### Fraudulent Misrepresentation – Defendant Navigators

40. Plaintiff realleges paragraphs one (1) through (24) as if set out in this Count III in full.

41. This is an action for fraudulent misrepresentation against Defendant Navigators.

42. At all times material hereto, Navigators represented that the policy would contain coverage for the "old" or "existing work" which is a material fact critically important to the Plaintiff.

43. Mr. Savarese and others acting on behalf of Navigators knew that the policy would not cover the "old" or "existing work" but represented that the policy would provide the affirmative coverage for the "old" or "existing work" requested by Plaintiff.

44. Mr. Savarese, acting on behalf of Navigators, made the false statement to induce Plaintiff to purchase the policy.

45. Plaintiff relied upon the representation of Navigators to pay a premium of $1,467,804.00 for Commercial Lines Policy IS16CGL182861IC.

46. Plaintiff relied upon the misrepresentation as to policy coverage perpetrated by Navigators and assumed responsibility for a minimum of $819,713.00 in costs, as reflected in Claim Number CGL340232, to perform the necessary work to remediate the defects discovered in the old or existing work to protect the work Plaintiff and its affiliates completed.

47. Plaintiff relied upon the fraudulent misrepresentation of Navigators to purchase the policy to cover the exact type of claim which has been denied by Navigator's causing Plaintiff to incur damages.

48. Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Court enter Final Judgment in favor of Plaintiff providing that:

A. Navigators fraudulently misrepresented coverage to Plaintiff and that Plaintiff is entitled to damages, including punitive damages.

B. Costs, including attorney's fees and costs to the extent authorized by law or contract, and such other relief this Court deems just and proper.

## COUNT IV

**Negligent Misrepresentation—Defendant Navigators**

49. Plaintiff realleges paragraphs one (1) through (24) as if set out in this Count IV in full.

50. This is an action for negligent misrepresentation against Defendant Navigators.

51. At all times material hereto, Navigators represented that the policy would contain coverage for the "old" or "existing work" which is a material fact critically important to Plaintiff.

52. Mr. Savarese and others acting on behalf of Navigators either knew the representation that the policy would cover the "old" or "existing work" was false, made the representation without knowledge of its truth or falsity, or should have known the representation was false.

53. Mr. Savarese, acting on behalf of Navigators, made the misrepresentation to induce Plaintiff to purchase the policy.

54. Plaintiff justifiably relied upon the misrepresentation of Navigators to pay a premium of $1,467,804.00 for Commercial Lines Policy IS16CGL182861IC.

55. Plaintiff relied upon the misrepresentation as to policy coverage perpetuated by Navigators and assumed responsibility for a minimum of $819,713.00 in costs, as reflected in Claim Number CGL340232, to perform the necessary work to remediate the defects discovered in the old or existing work to protect the work Plaintiff and its affiliates completed.

56. As result of Navigators' negligent misrepresentation, Plaintiff has been left without the requested coverage and Plaintiff's claim has been denied.

57. Plaintiff has incurred damages as result of Navigators' negligent misrepresentation.

WHEREFORE, Plaintiff respectfully requests that this Court enter Final Judgment in favor of Plaintiff providing that:

A. Navigators negligently misrepresented coverage to Plaintiff and that Plaintiff is entitled to damages.

B. Costs, including attorney's fees and costs to the extent authorized by law or contract, and such other relief this Court deems just and proper.

## COUNT V

### Negligent Misrepresentation—Defendant EPIC

58. Plaintiff realleges paragraphs one (1) through (24) as if set out in this Count V in full.

59. This is an action for negligent misrepresentation against Defendant EPIC.

60. At all times material hereto, EPIC represented that it was procuring a policy that would contain coverage for the "old" or "existing work" which is a material fact critically important to the Plaintiff.

61. EPIC holds itself out as providing expert consulting services in the insurance industry stating on its current website on the About Us page: "EPIC Insurance Brokers & Consultants has a depth of industry expertise across key lines

16

of insurance, including risk management, property and casualty, employee benefits, unique specialty program insurance and private client services."

62. EPIC's agent, Mr. Goodman, advised Plaintiff and its affiliates that the insurance policy to be issued by Navigators included coverage for the "old work" and after Plaintiff's claim was filed—by EPIC on behalf of Plaintiff—again confirmed coverage stating that the "existing work" was included within the scope of policy coverage because it was not excluded.

63. EPIC and Mr. Goodman either knew the representation that the policy would cover the "old" or "existing work" was false, made the representation without knowledge of its truth or falsity, or should have known the representation was false.

64. EPIC and Mr. Goodman made the misrepresentation to induce Plaintiff to purchase the policy.

65. Plaintiff justifiably relied upon the misrepresentation of EPIC and Mr. Goodman to pay a premium of $1,467,804.00 for Commercial Lines Policy IS16CGL182861IC.

66. Plaintiff relied upon the misrepresentation as to policy coverage perpetuated by EPIC and Mr. Goodman and assumed responsibility for a minimum of $819,713.00 in costs, as reflected in Claim Number CGL340232, to perform the necessary work to remediate the defects discovered in the old or

existing work to protect the work Plaintiff and its affiliates completed.

67. As result of EPIC and Goodman's negligent misrepresentation, Plaintiff has been left without the requested coverage and Plaintiff's claim has been denied.

68. Plaintiff has incurred damages as result of EPIC and Goodman's Navigators' negligent misrepresentation.

WHEREFORE, Plaintiff respectfully requests that this Court enter Final Judgment in favor of Plaintiff providing that:

A. EPIC negligently misrepresented coverage to Plaintiff and that Plaintiff is entitled to damages.

B. Costs, including attorney's fees and costs to the extent authorized by law or contract, and such other relief this Court deems just and proper.

## COUNT VI

### Negligent Procurement of Insurance — Defendant EPIC

69. Plaintiff realleges paragraphs one (1) through (24) as if set out in this Count VI in full.

70. This is an action for negligent procurement of insurance against Defendant EPIC.

71. Plaintiff's request for insurance coverage for damages or claims arising from the previously completed construction at the partially constructed resort complex was unambiguous and never in question.

72. All representatives of Defendant EPIC were aware that an insurance policy purchased by Plaintiff must include coverage for the "old" or "existing" work and indeed Mr. Goodman, acting on behalf of EPIC, confirmed that the Navigators policy would cover the "old work." **Exhibit 2.**

73. EPIC owed a duty to Plaintiff to procure the insurance coverage requested and was negligent in failing to procure a policy as explicitly requested by Plaintiff.

74. As a result of the negligence of EPIC and its representatives, Plaintiff did not receive the insurance coverage requested and paid for and has been left without coverage as to Claim Number CGL340232 in the amount of $819,713.00 as of the date of the claim.

WHEREFORE, Plaintiff respectfully requests that this Court enter Final Judgment in favor of Plaintiff providing that:

A. EPIC was negligent in failing to procure the insurance coverage Plaintiff requested and that Plaintiff is entitled to damages as a result of EPIC's negligence.

B.     Costs, including attorney's fees and costs to the extent authorized by law or contract, and such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

*/s/D. Kent Safriet*
D. Kent Safriet, Fla. Bar No. 174939
kents@hgslaw.com
Douglas M. Smith, Fla. Bar No. 12809
dougs@hgslaw.com
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
Telephone: (850) 222-7500
Facsimile: (850) 224-8551

Dated: May 12, 2021         *Attorneys for Plaintiff*